IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ADAM HANS : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. CV 2-06-781 |
| v. : | |
| : | JUDGE ALGENON L. MARBLEY |
| KEVIN O'BRIEN & ASSOCIATES : | Magistrate Judge Kemp |
| CO., L.P.A., *et. al.*, : | |
| : | |
| **Defendants.** | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on various motions. Plaintiff Joseph Adam Hans ("Plaintiff") brought a legal malpractice suit against Defendants Kevin O'Brien & Associates Co., L.P.A. ("O'Brien & Associates"), Kevin J. O'Brien ("O'Brien"), and Kim M. Halliburton-Cohen ("Halliburton-Cohen") (collectively "Defendants"). Defendants moved for summary judgment. Halliburton-Cohen brought a counterclaim against Plaintiff for legal fees. Plaintiff brought a Motion to Strike the Counterclaim as untimely. Halliburton-Cohen countered with a Motion to Strike Plaintiff's Motion to Strike and in the alternative, for a Motion for Leave to file her Counterclaim Instanter. For the reasons set forth below, the Court: (1) **GRANTS** Defendants' Motion for Summary Judgment; (2) **GRANTS** Plaintiff's Motion to Strike the Counterclaim; (3) **DENIES** Defendant's Motion to Strike Plaintiff's Motion to Strike; (4) **DENIES** Defendant's Motion for Leave to file the Counterclaim Instanter; and (5) **DISMISSES** Defendants O'Brien and O'Brien & Associates' counterclaim for lack of subject matter jurisdiction.

## II. BACKGROUND

### A. FACTS

In 1977, Plaintiff's father, Joseph H. Hans, and his step-mother, Shirley Stedman ("Stedman"), divorced and entered into a separation agreement which provided that:

> [Stedman] is further to receive all the husband's interest in a parcel of land containing the description of 20.1467 acres located on the Reynoldsburg-New Albany Road in Franklin County . . . [Stedman] further agrees to provide a piece of land on the 20.1467 to each of the husband's four (4) children from a previous marriage, namely [Plaintiff], Kenny, Polly and Gretchen, for each of said children to build a home **if they so desire**. Said piece of land is to be a minimum of two (2) acres.

(*Hans v. Hans*, No. 77DM-03-743, Sep. Agr. ¶ 5, ¶ 8, Mar. 25, 1977) (emphasis added). Unbeknownst to Stedman, prior to their divorce, her husband transferred his interest in the New Albany property by quit-claim deed to Reno Borean ("Borean"). As a result, Plaintiff's father had no interest in the New Albany property at the time that he entered into the separation agreement. Borean subsequently transferred his interest in the land to Stedman. Thereafter, she retained sole ownership of the property.

Plaintiff's father died intestate in 1994 and the administrator of his estate brought a quiet-title action against Stedman regarding the New Albany property. Upon his death, Plaintiff's father owed the federal government a significant amount of money. As a result, the Internal Revenue Service ("IRS") placed a lien on the New Albany property, joined the quiet-title action, and removed the case to federal court. On January 29, 2001, after protracted litigation, the parties entered into a stipulation agreement to dismiss the suit upon certain conditions. The stipulation agreement required Stedman to satisfy her late ex-husband's debt by selling the land. In return, Stedman, the estate, its heirs and assignees, and the IRS consented to release one

another from:

> [a]ll debts, claims, demands, damages, actions and cause of action whatsoever, including, but not limited to, all claims now asserted or that could have been asserted in the case pending in the United States District Court and any and all claims asserted or that could have been asserted by the Estate of [Plaintiff's father] in the Franklin County Probate proceeding, including but limited to all claims or rights of ownership or an interest in or entitlement to the said New Albany and any amount properties of which are the subject of this lawsuit.

(*Kaiser v. Stedman*, No. C2-95-1074 (Jan. 31, 2001)). Pursuant to the stipulation agreement, the case was dismissed with prejudice. Stedman then sold the property, paid $1,080,000 of the proceeds to satisfy the mortgage and the IRS, and retained the balance of the sale, a mere $65,000. Neither Plaintiff nor any of his siblings, despite their interest in the property, attempted to intervene in the action, challenged the stipulation agreement, or disputed the sale of the property.

On December 7, 2001, almost a year after the conclusion of the federal court proceedings, Plaintiff retained Defendants O'Brien and Halliburton-Cohen, attorneys with the firm O'Brien & Associates. Plaintiff then brought a contempt action against his step-mother in the Franklin County Court of Domestic Relations for failure to provide him with two acres of the New Albany property in violation of the 1977 separation agreement. On March 31, 2004, the Domestic Relations Court ruled that the doctrine of res judicata barred Plaintiff's claim. *Stedman v. Hans*, No. 77-DM-08-743, at *15 (Ohio Ct. Com. Pleas Mar. 31, 2004). The court found that the "claims in the [federal-court] action and the action now brought by [Plaintiff] concern the same issues, the same facts, the same property, and the same desired result, which was to obtain ownership interest in the property." *Id*. As a result, the court held that the resolution of the quiet-title action in federal court barred Plaintiff's contempt action. *Id*. at *8.

Alternatively, the court found that Plaintiff's father transferred his interest in the New Albany property before entering into the separation agreement. *Id*. at \*14. Accordingly, the provision in the separation agreement providing for Plaintiff's inheritance was null and void. *Id*. Plaintiff appealed.

The Ohio court of appeals affirmed on two independent grounds. *Hans v. Stedman*, No. 04 AP-377, 2005 WL 2235458, at \*6 (Ohio Ct. App. Sept. 15, 2005). First, the court held that the separation agreement required Stedman to provide land to Plaintiff and his siblings only on the condition that "they so desire." *Id*. at \*6. The court noted that at no time had Plaintiff manifested a desire to build a home on the New Albany property. *Id*. at \*7. This forms the basis of the legal malpractice claim at issue in this case because in fact, Plaintiff had a desire to build on the property, which he communicated to Defendants. But the appellate court also affirmed because the resolution of the quiet-title action in federal court precluded Plaintiff's contempt claim. *Id*. Plaintiff appealed to the Ohio Supreme Court, which declined to hear the case. *Stedman v. Hans*, 842 N.E.2d 64 (Ohio 2006).

## B. PROCEDURAL HISTORY

On September 19, 2006, Plaintiff brought this legal malpractice action against Defendants seeking compensatory and punitive damages. Defendants moved for summary judgment. O'Brien and O'Brien & Associates brought a timely counterclaim for $1,871.69 in unpaid legal fees. Halliburton-Cohen brought a counterclaim for $50,236.74, allegedly the quantum meruit value of her legal services for which she was never compensated. Plaintiff brought a Motion to Strike Defendant Halliburton-Cohen's counterclaim as untimely. Halliburton-Cohen countered with a Motion to Strike Plaintiff's Motion to Strike and,

alternatively, a Motion for Leave to File the counterclaim Instanter.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Therefore, the movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rest upon its mere allegations." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV. LAW & ANALYSIS

#### A. SUMMARY JUDGMENT

Defendants contend that even assuming arguendo that they breached a duty of care in representing Plaintiff, it was not the proximate cause of the dismissal of Plaintiff's contempt action. Under Ohio law, to prevail on a legal malpractice claim for negligent misrepresentation, Plaintiff must prove: "(1) an attorney-client relationship giving rise to a duty; (2) a breach of that duty; and (3) damages proximately caused by the breach." *Vahilla v. Hall*, 674 N.E. 2d

-5-

1164, 1167 (Ohio 1996).  Plaintiff alleges that the Ohio courts dismissed his contempt action because Defendants negligently failed to proffer evidence of his desire to build a home on the New Albany property, a condition precedent for inheritance under the separation agreement.

It is undisputed that Defendants both knew of Plaintiff's desire to build on the property and neglected to mention it.  Indeed, the Ohio Court of Appeals affirmed the trial court's dismissal partly because "none of the four children have requested land for the purpose of building a home nor have they indicated any desire to do so." *Hans*, 2005 WL 2235458, at *2. The court noted that without Plaintiff's manifested intent to build on the New Albany property, Stedman could not be held in breach of the separation agreement.  *Id*. at *7.  Plaintiff's contempt action was therefore "premature."  *Id*.  Accordingly, Plaintiff concludes that Defendants' negligence proximately caused the dismissal of his contempt action.

Although seductive, Plaintiff's argument is ultimately unpersuasive.  The appellate court also affirmed on alternative grounds, holding that:

> [a]nother reason for affirming the trial court judgment is that the federal court action which resulted in the sale of the property included **a release of any and all claims** asserted or that could have been asserted by the estate of [Plaintiff's father] in the Franklin County Probate Court proceedings, including all claims or rights of ownership or an interest in or an entitlement to the property at question in the contempt action.

*Id*. at *7 (emphasis added).

The court noted that although Plaintiff was fully aware of the quiet-title action he did not attempt to intervene.  *Id*.  As such, the court held that the release clause of the stipulation agreement precluded Plaintiff from re-litigating the issues raised in federal court.  *Id*. Specifically, the appellate court conjectured that in order to prevail, Plaintiff would have to allege that Stedman fraudulently obtained her interest in the New Albany property.  *Id*.  But the

-6-

appellate court ruled that the parties to the quiet-title action in federal court litigated the fraud issue to a decision on the merits. *Id*. Because Plaintiff was a successor in interest to his father's estate, the court held that the resolution of the quiet-title action precluded him from re-litigating the matter. *Id*. It is immaterial that the appellate court's opinion did not refer to the doctrine of 'res judicata.' By holding that release clause to the stipulation agreement precluded Plaintiff's claim, the appellate court's opinion strongly suggests that it would have affirmed the dismissal of Plaintiff's contempt action regardless of whether Defendants introduced evidence of Plaintiff's desire to build on the New Albany property.

Further, the trial court that initially dismissed Plaintiff's contempt action made no mention of his failure to manifest a desire to build a home on the New Albany property. Instead, the court held that the doctrine of res judicata barred Plaintiff's claim. *Stedman*, No. 77-DM-08-743, at *15. The trial court reasoned that Plaintiff was a party in privity to his father's estate, which negotiated the stipulation agreement and agreed to dismiss the quiet-title action with prejudice. *Id*. According to the trial court, Plaintiff's contempt action raised the same issues, proffered the same evidence, and the sought the same relief with respect to the same property as the quiet-title action. *Id*. In addition, the trial court held that the provision upon which Plaintiff sought relief was null and void because his father transferred his interest to Borean by quit-claim deed prior to the separation agreement. *Id*. at *14.

Even if Defendants had presented evidence of Plaintiff's desire, both the appellate and trial courts' opinions suggest that Plaintiff could not have circumvented the preclusive effect of the quiet-title action in federal court. Nor could Plaintiff prevail because the trial court found that his father transferred his interest in the property before the separation agreement, nullifying

Plaintiff's interest in the property. As a result, Defendants' negligence did not proximately cause the dismissal of Plaintiff's claim. Because Plaintiff fails to prove an essential element of his legal malpractice claim, the Court **GRANTS** summary judgment for Defendants.

### B. COUNTERCLAIMS

#### 1. Plaintiff's Motion to Strike the Counterclaim

Defendant Halliburton-Cohen brought a counterclaim for $50,236.74, the alleged quantum meruit value of her legal services. Plaintiff brought a Motion to Strike her counterclaim as untimely pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), which provides that a compulsory counterclaim must be filed with Defendant's initial pleading within twenty days of service of the complaint. Halliburton-Cohen concedes that her counterclaim arises from the same transaction or occurrence that spawned Plaintiff's legal malpractice claim. Her compulsory counterclaim was therefore untimely because she filed it on February 20, 2007, almost four months after she answered the complaint.

Halliburton-Cohen protests that the basis for the counterclaim arose after she filed her answer. The parties' contentious relationship ended on March 18, 2006. On February 8, 2007, almost a year after she ceased to represent Plaintiff and five months after he initiated this malpractice suit, Halliburton-Cohen first notified Plaintiff of his alleged obligation to pay $50,236.74 in quantum meruit fees. She gave Plaintiff only one week to pay. She alleges that her counterclaim arose only after Plaintiff failed to meet this artificial deadline.

It is well-established under Ohio law that a cause of action for breach of contract accrues when the contract is breached. Ohio Rev. C. § 2305.06. Plaintiff and Defendants entered into a Representation Agreement which provided that:

> In the event Client terminates this agreement and discharge Attorneys for any reason prior to settlement or verdict, and Client thereafter settles or tries her own case, or retains new counsel to do the same, then, in such an event, Client expressly agrees that Attorneys shall be paid in quantum meruit (i.e., "as much as is deserved") for legal services rendered in connection with the prosecution of Client's case until the date of discharge; that is, Attorneys are entitled to be paid for the work they have done on the Client's case from the beginning of the representation until the date of discharge.

(Ag. of Rep., 1, Sept. 23, 2002). Under the terms of the Representation Agreement, the client breaches the contract by terminating the attorney before a settlement or verdict. Accordingly, Plaintiff allegedly breached the contract when he terminated Defendants on March 18, 2006, not when he failed to pay Halliburton-Cohen's bill. Plaintiff correctly highlights the absurdity of Defendant's position: if the Court were to rule that the breach accrued upon billing, then it would nullify the statute of limitations. Attorneys could simply sit on a claim, perhaps keeping a counterclaim for quantum meruit fees as a retaliatory trump card in the event that their clients sued for legal malpractice. Because Halliburton-Cohen's cause of action arose before Plaintiff brought his legal malpractice action, she was obligated to file her compulsory counterclaim with her answer. Because she failed to do so, her counterclaim is untimely and Plaintiff's Motion to Strike is **GRANTED**.

2. Defendant's Motion to Strike Plaintiff's Motion to Strike

Defendant Halliburton-Cohen moves to strike Plaintiff's Motion to Strike for failure to serve all of the parties. Every "written motion other than one which may be heard ex parte" must be "served upon each of the parties." Fed. R. Civ. P. 5(A). Halliburton-Cohen contends that Plaintiff failed to serve Defendant Kenney-Pfalzer. As a result, Halliburton-Cohen argues that the Court should strike Plaintiff's motion. But Plaintiff voluntarily dismissed Kenny-Pfalzer from the suit before he filed the Motion to Strike. Because she was no longer a party to the

action, Plaintiff was not required to serve her. The Court **DENIES** Defendant Halliburton-Cohen's Motion to Strike.

### 3. Defendant's Motion for Leave to File Instanter

In the alternative, Halliburton-Cohen moves for leave to file the counterclaim instanter on the grounds that the claim matured after she answered Plaintiff's complaint. Pursuant to Federal Rule of Civil Procedure 13(E), the Court has discretion to "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Rather than offer a new basis for her claim or request leave to amend, Halliburton-Cohen simply reiterates the same rationale underlying her opposition to Plaintiff's Motion to Strike. As discussed above, she had a cognizable claim against Plaintiff at the time that she filed her answer. The Court **DENIES** Defendant's motion.

### 4. Remaining Counterclaim

Defendants O'Brien and O'Brien and Associates brought a timely counterclaim against Plaintiff for $1,871.69 in allegedly unpaid legal fees over which the Court exercised supplemental jurisdiction. Because the Court grants summary judgment for Defendants and O'Brien and O'Brien and Associates' counterclaim does not satisfy the amount-in-controversy requirement, the Court **DISMISSES** the counterclaim without prejudice for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1332.

### V. CONCLUSION

For the foregoing reasons, the Court: (1) **GRANTS** Defendants' Motion for Summary Judgment; (2) **GRANTS** Plaintiff's Motion to Strike the Counterclaim; (3) **DENIES** Defendant's Motion to Strike Plaintiff's Motion to Strike; (4) **DENIES** Defendant's Motion for

Leave to file the Counterclaim Instanter; and (5) **DISMISSES** Defendants O'Brien and O'Brien & Associates' counterclaim for lack of subject matter jurisdiction. This resolves all of the parties' claims before this Court.

    **IT IS SO ORDERED.**

                                                  s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: January 25, 2007**